GARRETT ET AL. *vs.* LYLE.

[BILL IN EQUITY TO OBTAIN DIVESTITURE OF LEGAL TITLE TO LAND, AND TO ENJOIN ACTION AT LAW FOR ITS RECOVERY.]

1. *Rule that plaintiff must recover on strength of his own title.*—Although, in equity, as well as at law, a plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's ; yet it is not necessary that he should show a good title against all the world, but it is enough that he shows a right to recover against the defendant.

2. *Estoppel against denying validity of judicial proceedings by claiming title under them.* Where the plaintiff and defendant both derive title from a purchaser at an administrator's sale, made under an order of the probate court, the defendant is estopped from denying the validity of the proceedings connected with the sale.

3. *Purchaser of land in possession of third person affected with notice.*—Where one purchases land in the possession of a third person, without inquiring into his rights or the character of his possession, he is affected with all the equitable rights binding on his vendor.

APPEAL from the Chancery Court of Chambers.
Heard before the Hon. W. W. MASON.

THIS bill was filed by Thomas G. Lyle against John Garrett, Bartholemew B. Moore, Allen McWalker, and the heirs-at-law of William Vann, deceased ; and its object was, to obtain a divestiture of the legal title to a certain tract of land, and a perpetual injunction of an action at law instituted for its recovery. It alleges, that the said tract of land was allotted and set apart, under the treaty between the United States and the Creek Indians, to an Indian woman by the name of Sally, as her reservation, and she was duly located on it ;

that said Indian afterwards died in possession of said land, having never sold or otherwise disposed of it ; that letters of administration on her estate were granted by the Orphans' Court of Chambers, in which county said lands were situated, to one Gresham, who afterwards, as administrator, petitioned said court for an order of sale of said lands ; that on the first Monday in August, 1835, said court granted an order of sale, and appointed three commissioners to conduct the sale ; that the commissioners, pursuant to the order of sale, proceeded to sell said lands, on the 3d October, 1835, at public auction, and one William Vann became the purchaser, through one Bonner as his agent, for the sum of $827 ; that the commissioners made their report of the sale to said court, showing that Bonner was the purchaser, but they afterwards rectified their report so as to show that Vann was the real purchaser ; that Vann paid the purchase money to the commissioners, who paid it to the clerk of the court, who paid it to the administrator ; and that said court, in July, 1837, decreed that said commissioners should convey the land to said Vann.

The bill further alleges, that said Vann entered into possession of said lands, and on the 25th January, 1836, sold them to Allen McWalker, and executed to him a written instrument, under seal, which recited the said sale, and was conditioned that Vann should refund the purchase money if he failed to obtain for McWalker sufficient titles for said land ; that McWalker paid the purchase money, went into possession of the land, erected valuable improvements thereon, and on the 8th November, 1845, sold said land to complainant, and executed to him his bond for titles ; and that complainant paid the purchase money, entered into possession of the land, has remained in possession thereof from that time up to the filing of his bill, and has erected valuable improvements thereon.

It is then alleged, that said Vann, in November, 1841, having in the meantime become insolvent, again sold said lands to said B. B. Moore ; that this sale, though purporting to be for value received, was in fact fraudulent, and was intended to defeat his previous sale to McWalker, who, as was well known to said Moore, was then in the adverse possession of the lands ; that Vann died some time in 1843, and in February, 1846, said Moore conveyed said lands to his co-defend-

ant John Garrett, under (as complainant charges) some champertous agreement to divide the spoils between them; that Moore and Garrett, in pursuance of their fraudulent agreement, on the 17th day of August, 1846, procured a deed to be made by said commissioners to said Vann, who had then been dead about three years; that said Garrett, by a fraudulent use of the said deed, together with the conveyances by said Vann to Moore, and by Moore to himself, procured a patent for said lands from the United States Government on the 14th December, 1846, which he is now setting up as valid against complainant; and that he has instituted suit against complainant, in the Circuit Court of Chambers, for the recovery of said lands.

A transcript of the proceedings of the Orphans' Court in the matter of the sale of the land, and copies of all the conveyances, title-bonds, &c., are appended as exhibits to the bill; and the prayer is, that the legal title to said land may be divested out of said Garrett, or that he may be declared a trustee for complainant,—that the action at law may be perpetually enjoined, and for general relief.

The defendants Moore and Garrett filed separate answers to the bill, but they are in substance the same. They deny specifically all the allegations of fraud; admit that the land belonged to the said Indian as her reservation, was sold under an order of the Orphans' Court, and was bought by said Bonner for Vann; deny all knowledge of the alleged sales from Vann to McWalker, and from the latter to complainant, as also of the accompanying adverse possession; and allege that Vann, on the 17th October, 1835, previous to the alleged sale to McWalker, being indebted to Moore, sold said lands to him, and executed to him a title-bond of that date, and that the subsequent conveyance in 1841 was only carrying out this contract.

The record is very voluminous, but the view here taken of the case renders it unnecessary to state the evidence. On final hearing, on bill, answer, exhibits, and proof, the chancellor granted the relief sought by the bill; and his decree is now assigned for error.

L. E. PARSONS, with whom was D. CLOPTON, for appellants,

contended that the proceedings of the Orphans' Court, under which the complainant derived title, were void for want of jurisdiction ; and made these additional points :

1. That it is the settled rule in equity, as at law, that the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's title.—Antonez v. Eslava, 9 Port. 537; Pickens v. Harper, 1 Sm. & Mar. Ch. 539.

2. That the defendants are not estopped from showing that Lyle has no sufficient equitable right on which to found his claim for relief. A grantee is permitted to show that his grantor was not seized, as is every day allowed in actions of covenant.—Small v. Procter, 15 Mass. 499. Where the truth appears by the same record, as it does here, a man shall not be estopped.—Co. Litt. 352 b ; Plowd. 134, 422; Comyn's Digest, tit. Estoppel (E, 2); Sinclair v. Jackson, 8 Cowen's R. 586. The proceedings of the Orphans' Court being void, the recital of them in the patent cannot operate as an estoppel.—Kercheval v. Triplett's Heirs, 1 A. K. Mar. 495–6. Since the patent is the deed (not of Garrett, but) of the United States, it cannot operate to estop him from denying that the grantor had title.—Winlock v. Hardy, 4 Litt. 274. Estoppels must be mutual, which this is not; neither did Garrett procure the order of sale, or induce either McWalker or Lyle to purchase.—Stone v. Brittan, 22 Ala. 547. The case of Cocke v. Pollard, 19 Ala. 192, does not militate against this view, since we here show (what the court there say must be shown) that the heirs of the Indian have the title.

JAS. E. BELSER, *contra*, insisted that the defendants in the court below were estopped from denying the validity of the proceedings of the Orphans' Court, and cited Lamkin v. Reese, 7 Ala. 170; Cocke v. Pollard, 19 *ib.* 192.

NOTE BY REPORTER.—Many other points are raised on the record, and argued on the briefs of the respective counsel ; but they have no connnection with the points decided by the court, and are therefore omitted.

GOLDTHWAITE, J.—We do not consider it at all necessary to investigate the validity of the proceedings of the Orphans' Court in relation to the sale of the land, for the reason,

that Moore and Garrett, from the position which they occupy, cannot be allowed to question their correctness. We do not deny, that in equity, as well as at law, the plaintiff must recover on the strength of his own title; but because this is the rule, it does not follow that he must show a good title against all the world. It is enough that he shows a right to recover against the defendant; and there are many cases in which he has this right, although another person might recover it from him.

Considering the case without reference to the alleged sale from Vann to Moore, in 1835, the facts disclosed by the record are, that Vann bought the land at an administrator's sale had under the proceedings of the Orphans' Court; that in 1836 he sold, and executed his bond for titles, to McWalker, who paid the purchase money, and went into possession. The complainant Lyle asserts his right to the land under a subsequent purchase from McWalker, as set out in his title bond. In 1841, while McWalker was in possession under his purchase, Vann sold to Moore, executing to him a writing reciting the sale, not under seal. This writing, in 1846, Moore assigned to Garrett, under an agreement with him, that he should obtain a patent from the United States; and if he obtained it, Garrett was to keep the land, and pay Moore one half its value. The pleadings admit that Garrett obtained the patent by virtue of the sale had under the proceedings of the Orphans' Court; and having done this, he attempts to support the title thus obtained, against the prior equity of McWalker based upon the same proceedings, by asserting that they are void.

Upon the mere statement of the proposition, it is so manifestly opposed to natural equity, that it would require the strongest array of authority to support it. The doctrine of estoppel has its origin in reason and justice, and the principles on which it is founded apply equally to the admission of judicial proceedings as any other act or admissions; and that such proceedings are void, does not in the slightest degree affect the question as to the right of the party who has secured an advantage to himself, or changed the condition of others by asserting their validity, to be allowed to deny them. A party may be estopped from denying the validity of a void

deed.—Drane v. Gregory, 3 B. Mon. 619. A purchaser at administrator's sale is estopped from showing its illegality, while he retains possession of the property sued for under the sale.—Harbin v. Levi, 6 Ala. 399. The principle on which those decisions rest, is the same which must govern in the one under consideration. The title of Garrett has no other foundation than the sale of the land under the proceedings of the Orphans' Court. In obtaining and accepting the patent, he recognized its validity ; and this title he is using to eject one who claims under the same sale, and by a prior and superior equity. He cannot do this, without denying the validity of the sale upon which his own title is founded, and this the policy of the law will not allow : it would be virtually permitting him to disparage the title under which he asserts his right.

The view we have taken is decisive of the case, in the aspect in which we have considered it, as it throws the equity of the appellants, Garrett and Moore, upon the sale made to the latter in 1841 ; and as between that sale, and the prior purchase made by McWalker, the last must prevail. The rule is, that where one purchases land in the possession of a third party, without inquiring into his rights or the character of his possession, he is affected with all the equitable rights binding on the vendor.

In relation to the alleged sale to Moore in 1835, it is only necessary to say, that the burden of proof devolved on them. The testimony not only fails to show that any such sale was made, but there is a clear preponderance of evidence to the fact that the written contract of sale which is set up by the parties was a fabrication, got up by Vann and Moore for the purpose of defrauding McWalker,—made after the sale, and antedated in order to accomplish the fraud.

The decree is affirmed, and Moore and Garrett must pay the costs of the appeal.