## MARSTON *vs.* ROWE.

[BILL IN EQUITY FOR REMOVAL OF CLOUD FROM TITLE TO LAND.]

1. *Title by prescription.*—Possession for more than twenty years, with claim of title under a vendor's bond, with the knowledge and acquiescence of the executors and devisees of the deceased vendor, gives a title by prescription, such as a court of equity will protect, as against the devisees or any one claiming under them, irrespective of the validity of the bond.

2. *Removal of cloud from title.*—A party who has a perfect title by prescription to land, a part of which is in the actual possession of another, may come into equity to remove a cloud on his title, which is caused by the assertion of title on the part of the person thus in possession, and the registration of the sheriff's deed under which he claims.

APPEAL from the Chancery Court at Mobile.
Heard before the Hon. N. W. Cocke.

THE bill in this case was filed, on the 20th February, 1861, by Charles A. Marston, against Nancy Rowe, and

Marston v. Rowe.

Thomas Gleason; and alleged the following facts: In 1831, Andrew Dexter loaned or advanced one hundred and fifty dollars to Joshua Collins, to enable the latter to enter a quarter-section of land, to which he had pre-emption right under the acts of congress, under an agreement that the land should be divided equally between them; and Collins executed to him a penal bond, which recited the agreement, and was conditioned for the faithful performance thereof on his part so soon as a patent for the land was obtained. "From the execution of said bond, the west half of said land was treated and recognized by said Collins as the property of said Dexter, Collins claiming only the east half." A patent was issued for the land; but Collins died, in 1832, without having conveyed to Dexter the west half according to the stipulations of the bond. By his last will and testament, which was duly admitted to record, said Collins devised all his "right, claim, interest, and title," in and to said quarter-section of land, to his two sons, Joshua and Christopher Collins. After his death, "the division of the land as agreed between him and Dexter, and Dexter's right to the west half, was recognized and observed by all his children, heirs, and executors, who only claimed that his title and interest related to the east half; and said devisees and children continued to recognize and acknowledge Dexter's title to the west half during his life, and he held possession thereof until his death." Dexter and the devisees of Collins surveyed their respective portions of the land, and divided them into lots; "all which things were done by said Dexter with the full knowledge of said devisees, and of their sister, Nancy Rowe." On the 20th October, 1836, Dexter sold and conveyed a portion of his land to one Darling Collins, who was a son of said Joshua Collins, jr., and who, on the 16th May, 1837, sold and conveyed to Newton St. John. On the 18th February, 1851, St. John sold and conveyed to Peter Conroy; and on the 2d August, 1852, the land was sold under execution against Conroy, and purchased by one Joseph Elea, who sold and conveyed to William Alling on the 13th March, 1854; and on the 20th December, 1859, said Alling sold and conveyed to the complainant. These deeds were all duly recorded, and

possession of the land was held under them; the several purchasers having "paid the taxes from the dates of their respective purchases, kept off trespassers, controlled the land as their own, and recognized by the public as the owners, though they never actually enclosed or lived on said land." In October, 1858, Nancy Rowe, confederating with Thomas Gleason, and being in possession of five or six acres of the land, procured an execution to be issued on an old judgment against Joshua and Christopher Collins, and levied on the land. She became herself the purchaser at the sale, and received the sheriff's deed, which she had duly recorded, and under it asserted title to the whole lot. The bill charged, "that whatever title or interest Nancy Rowe may have acquired by her said purchase, if any at all, she holds in trust for complainant; and that her said purchase, and the registration of her said deed, throws a cloud over his title, and embarrasses it and the sale of the land." The prayer of the bill was, "that said Nancy Rowe and Thomas Gleason may be compelled to surrender the possession of said land to complainant; that the title of said Nancy Rowe may be divested out of her, and the legal title to said land be vested in complainant"; and for other and further relief.

The chancellor dismissed the bill, for want of equity, on the ground that the contract between Andrew Dexter and Joshua Collins, as evidenced by the bond of the latter, which was made an exhibit to the bill, was void, as being contrary to the pre-emption laws; citing *Tenison v. Martin*, (13 Ala. 21,) and *Dial v. Hair*, 18 Ala. 798. The chancellor's decree is now assigned as error.

R. H. & J. L. SMITH, for appellant. .
JOHN HALL, *contra.*

JUDGE, J.—If the equity of the bill depended upon the validity of the bond from Joshua Collins, the elder, to Andrew Dexter, and its validity could be assailed after the lapse of more than twenty years from the date of its execution and delivery, there would, perhaps, be no error in the decree of the chancellor. But the equity of the bill, though remotely connected with the bond, is wholly extraneous from the question of its validity.

In considering the demurrer for the want of equity, all the allegations of the bill are to be taken as true. From them it appears that the possession of the land in question by Dexter commenced, under the bond, in 1831; that there was continuous possession, control, and ownership, by himself, and those claiming under him, for a period of more than twenty years before the accrual of the title of Nancy Rowe; and that all this was with the full knowledge and acquiescence of Joshua Collins, the younger, and Christopher Collins, whose title Nancy Rowe purchased at a sheriff's sale of the property, and of all the heirs and devisees of Joshua Collins, the elder, including Nancy Rowe herself. Under these circumstances, the ordinary statute of limitations would perfect a title in the appellant, irrespective of the legal presumption arising from twenty years' possession, which is more general in its operation than statutory bars.—*McArthur v. Cairre's Adm'rs,* 32 Ala. 75.

In the aspect in which the case is presented, we need not discuss with particularity what constituents of an adverse possession are necessary to operate a *disseizin,* and sustain a prescription. It is averred in the bill, that the appellant, and those under whom he claims, "never actually enclosed, or lived upon the land;" yet the allegations show what the law would regard as a possession, for the purpose of the statute of limitations at least; and it is also averred, that Nancy Rowe, and those under whom she claims, had *actual notice* of, and acquiesced in, the adverse possession and claim of title of Dexter and those holding under him, with full knowledge of all the circumstances.—*Brown v. Cockerell,* 33 Ala. 88; also, *Herbert v. Hanrick,* 16 Ala. 581; *Farley v. Smith,* at January term, 1863.

[2.] The next question is, as to the right of the appellant to relief, on account of the alleged cloud upon his title. The bill avers, that Nancy Rowe has had the conveyance of the premises from the sheriff to her, recorded; and that although she is in actual possession of but five or six acres, yet she claims the whole of the land, under the deed, and thereby casts a cloud upon appellant's title. It is now fully established, that a court of equity has jurisdiction, to set aside deeds, and other legal instruments, which are a cloud

upon the title to real estate, and to order them to be delivered up and cancelled.—*Petit v. Shepherd*, 5 Paige, 501. In the language of Judge Story, "If an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it; since he can only retain it for some sinister purpose."—2 Story's Eq. § 700. See, also, *Lyde v. Hunt*, 11 Ala. 295; *Burt v. Cassety*, 12 Ala. 734; *Smith v. Pearson*, 24 Ala. 355; *Hunt & Frowner v. Acre & Johnson*, 28 Ala. 580. The registration of the deed in this case, and the claim of title under it, casts a shade upon the title of appellant, which it is his right to have removed, as it is calculated to impair the market value of his estate.

The decree of the chancellor is reversed, and the cause remanded.