# Abbett *v.* Page.

*Statutory Action in nature of Ejectment.*

92   571
109   414
92   571
132   840

1. *Estoppel by deed with warranty.*—The grantor in a conveyance with general warranty, remaining in possession of the land, is estopped from setting up a claim or title inimical to the rights of the grantee; but he may afterwards acquire a title by adverse possession under the statute of limitations, and that title would not pass to the grantee by operation of the covenants of warranty.

2. *Parol evidence as to boundary, or dividing line, as affecting adverse possession.*—Plaintiff claiming under a prior conveyance from defendants' vendor, in which the boundaries described included the lot sued for, and the evidence showing that said vendor retained the possession of said lot after the sale and conveyance to plaintiff; it is competent for defendants to prove that, after plaintiff had gone into possession of the adjoining lot under his deed, said vendor "pointed out to him what she called the dividing line between them, and that he thereupon built a fence along that line;" not for the purpose of showing a mistake in the description of the boundary in the deed, but as showing the adverse character of the vendor's possession.

3. *To what witness may testify.*—A witness may be asked whether a party *knew* a fact open to observation, as the erection of improvements on a lot adjoining his own.

4. *Payment of mortgage debt, as affecting legal title.*—By statutory provisions (Code, § 1870), payment of a mortgage debt divests the legal title conveyed by the mortgage; and the statute includes mortgages executed before its passage.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This was a statutory action in the nature of ejectment brought by the appellant, A. K. Abbett, against the appellees, Mattie Page *et al.*, and sought to recover the possession of a certain lot specifically described in the complaint. Hattie Davis, on motion, made herself a party defendant to the bill as landlord of three of the original defendants, who were her tenants upon a portion of the lot sued for; and she disclaimed as to the rest. The lot sued for was situated in the city of Montgomery, and its dimensions are 70x200 feet. On the trial, as is shown by the bill of exceptions, there was evidence introduced showing that prior to the 6th of March, 1878, one Mrs. Amanda Booth owned and occupied the lot in controversy; that on that day she executed a conveyance to the plaintiff in this suit, of the property, and transferred unto to him the whole of the lot here sued for; and that on the same day the plaintiff executed to her a mortgage back on the property to secure the deferred pay-

[Abbett v. Page.]

ments of the purchase-money; and that upon the execution of the deed the plaintiff entered into possession of the upper or northern portion of the lot here sued for. It was further shown that after the sale the said Mrs. Booth occupied the southern portion of the lot—living on it up to the time of her death which occurred in December, 1882; that on January 25th, 1882, the said Mrs. Booth executed to the defendant Hattie Davis a deed to a lot 50x70 feet, describing it in the deed as the 50 feet, lying between the lot owned and occupied by her, Mrs. Booth, and the land sold by her to the plaintiff; that upon the execution of this conveyance, the said Hattie Davis took possession of the lot described therein, has improved the same by building a house thereon, and has been continuously in possession claiming it as her own through her tenants. It was further shown, that upon the death of Mrs. Booth, her administrator, under an order of the court, sold and conveyed by deed the southern half of the lot which had been occupied by the said Mrs. Booth during her life, to one Thos. Banks, who occupied the same by his tenants, who are the other defendants of this suit.

Against the objection and exception of the plaintiff, the court allowed the defendants to introduce witnesses, who testified that shortly after Mrs. Booth had executed the deed to Abbett, and after Abbett had gone into possession of the north end of the lot, Mrs. Booth pointed out to Abbett "what she called the dividing line between them," which afterwards became the northern boundary of the lot sold to Hattie Davis; that upon the designation of this line by Mrs. Booth, the plaintiff built a fence along said line; that this fence was built in the latter part of the year 1878, or the early part of 1879; and that the said Mrs. Booth remained in possession of the remaining 150 feet south of such fence, until she sold to Hattie Davis a part thereof, as above stated. Against the objection and exception of the plaintiff, the court allowed the defendants to ask one of the witnesses, did Abbett, the plaintiff, "know that Miss Davis had improved her property?" There was evidence tending to show that the plaintiff had paid the mortgage which was given to secure the deferred payments on the land; but the proof was in conflict and uncertain as to whether it had been paid before or after the law day of the mortgage.

Upon the evidence as adduced the plaintiff requested the court to give the following written charges: (1) "If the jury believe the evidence they must find for the plaintiff as against the defendant, Miss Davis." (2) "If the jury believe the evidence they must find for the plaintiff as against the defendants

[Abbett v. Page.]

Mattie Page and Henrietta Nobles." (4) "If the jury believe from the evidence that the note and mortgage given by plaintiff to Booth in March 1878 were paid and discharged at any time before Booth undertook by the deed offered in evidence by defendant Davis, to convey to Davis, i. e. at any time before—then at the time of Booth's deed to Davis, Booth had no title by reason of such mortgage and could convey none." (6) "If the jury believe from the evidence that the mortgage made by Abbett to Booth was paid before the commencement of this suit, then said mortgage does not avail the defendant as evidence of title paramount to plaintiff's title." The court refused to give each of the charges as requested, and to each refusal the plaintiff separately excepted.

There was judgment for the defendant. The plaintiff brings this appeal, and assigns as error the rulings of the court upon the evidence, and the refusal to give the charges as asked.

SAYRE & PEARSON, for appellant.—The payment of the mortgage debt revested the title to the mortgaged premises in the mortgagor, who is the plaintiff in this case.— *Washington v. Washington*, 69 Ala. 285; *Randall v. Kreiger*, 23 Wall. 137; *Ewell v. Daggs*, 108 U. S. 143; *Campbell v. Holt*, 115 U. S. 620; *Goshen v. Stonington*, 4 Conn. 209; Cooley Const. Lim. (5th Ed.) pp. 456, 465, 464, note 2. There was error in permitting evidence that Mrs. Booth pointed out boundaries different from those named in her deed.—3 Brick. Dig. p. 413, § 97 *et seq.;* Same, p. 325, §§ 33, 34. After payment of the mortgage debt, Mrs. Booth was estopped to set up adverse possession as against her vendee, on account of her general covenant of warranty, and by the words, "grant, bargain and sell."—1 Warvell on Vendors, p. 204; Bigelow on Estoppels, (2nd Ed.) p. 304; Rawle on Covenants for Title, (5th Ed.) § 128; *Sedgwick v. Hollenback*, 7 John. 376; *Mc-Cormick v. Herndon*, 67 Wis. 650; *Smith v. Williams*, 44 Mich. 242; *R. R. Co. v. Conklin*, 29 N. Y. 587; *Doe v. Dowdell*, 3 Houst. 369.

TOMPKINS & TROY, *contra.*—Evidence that Mrs. Booth pointed out the boundary line, &c., was competent as tending to establish adverse possession in her. She and those claiming under her were not estopped from setting up adverse possession.—1 Amer. & Eng. Encyc. of Law, p. 247, note 4. Whether a person has knowledge of a certain fact is a fact to which he can testify; the manner he acquired such knowledge can be found out on cross-examination.—*Chenault v. Walker*, 14 Ala. 151; *Olds v. Powell*, 10 Ala. 383. The

[Abbett v. Page.]

mortgage having vested in Mrs. Booth the legal title, it remained in her and those claiming under her, unless she had reconveyed it, or perhaps, unless the debt secured by said mortgage had been paid on or before the law day of the mortgage.—*Jackson v. Scott*, 67 Ala. 99; *Slaughter v. Doe. Ib.* 494. The burden of proving payment of mortgage debt before law day of mortgage was upon the mortgagor.—*Garrett v. Garrett*, 64 Ala. 263; 3 Brick. Dig. p. 433, § 392.

WALKER, J.—The estoppel of a grantor, who remains in possession of land after a conveyance with general warranty, to set up a claim to the land inimical to the rights of the grantee, can not be extended so far as to prevent the grantor's acquisition of title by a subsequent holding adverse to the grantee; and the title so acquired by adverse possession does not pass to the grantee by operation of the covenants of warranty in the deed. The estoppel upon the grantor is similar to that operating in favor of a landlord as against his tenant so long as that relation exists and is recognized between them. But the tenant may repudiate the relationship and set up an adverse claim and possession in himself, which, when properly brought home, whether expressly or by implication, to the knowledge of the landlord, will put in operation the statute of limitations in the tenant's favor.—*Wells v. Sheerer*, 78 Ala. 142. In like manner, the grantor, who by remaining in possession becomes the grantee's tenant, may repudiate the relationship evidenced by his deed and may re-acquire title by an adverse possession for the requisite length of time. No more than in the case of an ordinary tenancy, it is necessary that such possession should have been hostile in its inception. Full effect is given to the deed when it is held to vest the absolute title at its delivery, and that it estops the grantor from setting up any other title as then held adversely. A subsequent acquisition of title by adverse possession is no more a breach of warranty than would be a re-conveyance by the grantee to the grantor. So far as the parties to this suit are concerned, the deed to the appellant vested in him a perfect legal title. It does not appear that there has been a breach of any of the warranties in that instrument. In the absence of such breach, the warranties do not operate to preclude the grantor from holding an independent title subsequently acquired. Appellant's title could be as effectually divested by an adverse possession as by his own conveyance, and no more in the one case than in the other would such divestiture of title be defeated by the warranties in the deed. If Mrs. Booth and the appellees claiming under her have, by adverse possession, acquired

[Abbett v. Page.]

title to a portion of the lot sued for, the warranties in the deed to appellant can not operate to vest that title in him or to secure to him the right to recover possession of the land. *Stearns v. Hendersass*, 9 Cush. 407; *Sherman v. Kane*, 86 N. Y. 57; Rawle on Covenants for Title, (5th Ed.) p. 374; 1 Am. & Eng. Encyc. of Law, 247.

At the date of her deed to appellant, Mrs. Booth was living on the south end of the lot described in the deed. She continued to live there up to the time of her death in 1882. It was not improper to admit proof that, after appellant had gone into possession of the north end of the lot, Mrs. Booth pointed out to him what she called the dividing line between them, and that thereupon appellant built a fence along that line. This evidence was competent, not to show a mistake in the conveyance as to the boundary line therein described, but upon the question of the alleged adverse character of the possession retained by Mrs. Booth of the portion of the lot south of the line.

There was no error in refusing to give charge 2. It is urged that this charge should have been given because there was no evidence to show any possession between the death of Mrs. Booth and the entry by Banks, the landlord of the defendants Page and Nobles. If the proof shows that Mrs. Booth had adverse possession, in the absence of evidence to the contrary, that possession may be presumed to have continued, and that her heirs or personal representative succeeded thereto. *Marston v. Rowe*, 43 Ala. 271. Nor was there error in allowing a witness to be asked if the plaintiff knew that Miss Davis, to whom Mrs. Booth had made a deed to a portion of the lot, had improved her property. A person's knowledge of a thing is a fact to which a witness may testify. If it was desired to ascertain the grounds upon which the witness based his conclusion as to such facts, this could have been done by a cross-examination.—*Elliott v. Stocks*, 67 Ala. 290; *Hood v. Disston*, 90 Ala. 277; *Chenault v. Walker*, 14 Ala. 151.

The defendants did not rely alone on the claim of title by adverse possession. The plaintiff's right of recovery was also denied on the ground that there had been no re-conveyance to him of the legal title which was vested in Mrs. Booth by his mortgage to her to secure the deferred payments on the purchase of the lot. The defendants did not claim that the mortgage debt had not been paid. The evidence was conflicting as to whether the payment was made before or after the law day of the mortgage. Under the common law as recognized in this State, payment of the mortgage debt did not divest the legal title of the mortgagee.—*Jackson v. Scott*,

67 Ala. 99; *Slaughter v. Doe, Ib.* 494. By the act approved November 28, 1884, it was provided, that the payment of a debt, secured by mortgage, shall have the effect to divest the title out of the mortgagee, or his assigns, whether such payment is made before or after the maturity of the debt, and whether said mortgage is made, or paid, before or after the passage of the act.—Acts of 1884–85, p. 73; Code of 1886, § 1870. Before the passage of this act, upon payment after breach of condition, there was left in the mortgagee, who had not properly released and discharged his claim, a bare legal title, held in trust for the sole benefit of the mortgagor and those claiming under him.—*Baker v. Gavitt*, 128 Mass 93; 2 Jones on Mortgages, § 889. Common law rules as to conveyances of real estate operated to preserve outstanding against the beneficial owner of the property a naked legal right, which, as said by an eminent commentator on constitutional law, it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect.—Cooley on Constitutional Limitations, (6th Ed.) 464; *Ewell v. Daggs,* 108 U. S. 143–151. Courts of equity all along recognized the true character of the mortgage as a mere security, upon the discharge of the debt treated the mortgage as discharged; and, on application of the mortgagor, would compel a release or re-conveyance by the mortgagee of the legal title. The abolition of the requirement that the mortgagor must apply to a court of equity for relief in such case affects no substantial interest of the mortgagee, who held only a security for a debt which has been paid; and he can not claim a vested right to compel the mortgagor to adopt a special mode of procedure to to remove a mere technical obstacle to the recovery of his property. This right of a mortgagee, who has been fully paid, to set up the legal title conveyed by the mortgage to defeat the mortgagor's recovery, formed no element of the property interest secured by the contract of mortgage. It was merely a privilege that belonged to the remedy. Such a defense is unconscionable, and the power to interpose it may be taken away by legislation extending the benefits of the remedy afforded thereby to past as well as to future transactions. *Read v. Plattsmouth,* 107 U. S. 568; *Ewell v. Daggs, supra;* 2 Am. & Eng. Encyc. of Law, 759–760; *Ex parte Buckley,* 53 Ala. 42; 3 Brick. Dig., 784. The act above referred to operated to preclude the mortgagee or her assigns from claiming title under the mortgage, if the debt secured thereby had been paid. Charge numbered 6 requested by the plaintiff should have been given. For the error in refusing to give

this charge, the judgment of the Circuit Court must be reversed.

Reversed and remanded.

### *Statutory Action in nature of Ejectment.*

