[Garrow, et al. v. Toxey.]

# Garrow, *et al. v.* Toxey.

### *Ejectment.*

(Decided Feb. 9, 1911.   54 South. 556.)

1. *Evidence; Land Office Record; Color of Title.*—Copies of ancient documents filed in the United States land office and the findings of the register of that office, are admissible in ejectment as evidence to establish color of title.

2. *Appeal and Error; Harmless Error; Evidence.*—Where a patent evidencing such proceedings was admitted, any error in excluding evidence of the proceedings of the land office, was harmless, especially where plaintiff's prior patent was not impeached.

3. *Same; Records; Conclusiveness.*—Where the bill of exceptions recites that the deed to which objection was interposed was a quit claim deed, but does not set it out, this court on appeal must treat it as such, and disregard special covenants claimed by counsel in their brief to have been contained in the deed, since to do otherwise would involve a contradiction of the record.

4. *Ejectment; Evidence; Quit Claim Deed.*—Since a quit claim deed passes only such interest as existed in the grantor when it was executed, title afterwards acquired under a patent does not inure to the grantee in a prior quit claim deed; hence, in ejectment, it was error to admit such a deed as evidence of a link of title in connection with a subsequent patent to the grantor.

5. *Adverse Possession; Interruption of Possession.*—In an action of ejectment, acts of ownership over the lands sued for by a third person are admissible to show interruption of the possession claimed by the defendant.

6. *Deeds; Quit Claim Deed; Effect.*—A grantor in a quit claim deed is not responsible for the goodness of his title.

7. *Public Lands; Patents.*—The Gazzam patent of 1841, and the Eslava patent of 1848 being intended merely to give Gazzam prima facie title with permission to the Eslava heirs to dispute it, the acceptance of the patent by the Eslava heirs did not admit the superior title in Gazzam.

8. *Executors and Administrators; Sales; Petition; Decree.*—Where it appeared that two petitions had been pending when the sale of the land was ordered, if either of the two petitions for an administrator's sale was sufficient to sustain an order of sale, the sale will be upheld.

9. *Same; Sufficiency.*—Where one petition for an administrator's sale of land recited that no personalty ever came into his possession, and a subsequent petition stated that it was necessary to sell, such petitions were sufficient to sustain a sale as against a collateral attack, although either was subject to demurrer.

[Garrow, et al. v. Toxey.]

10. *Same; Devastavit; Presumption.*—A devastavit will not be presumed.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWN.

Statutory ejectment by Caleb Toxey against H. W. Garrow and others. Judgment for plaintiff and defendants appeal. Reversed and remanded.

HAMILTON & THORNTON, and BESTOR, BESTOR & YOUNG, for appellant. The afterwards acquired title of Gazzam derived under the patent did not inure to the benefit of his grantee Wragg, as he held under a quit claim deed.—*Tillson v. Kennedy,* 5 Ala. 407; *Tutwiler v. Tenn. Co.,* 108 Ala. 484; *Frost v. Missionary Society,* 56 Mich. 89. Hence, the court erred in admitting the quit claim deed. The court erred in overruling objections to the introduction in evidence of the petition of McGuire as administrator of Stuart, for the sale of said land for the payment of debts, and neither petition contains the necessary jurisdictinal everments.—*Banks v. Speas,* 97 Ala. 569. The court erred in admitting the deed from Gary to Toxey, as it was unconnected with plaintiff's title, and was immaterial to any issue. The court erred in admitting in evidence the affidavit of S. H. Garrow as to declarations of former owner while in possession. —*Humes v. O'Brien,* 74 Ala. 79; *Saffron v. Crump,* 69 Ala. 77; *Cleveland v. Hughey,* 18 Ala. 343; *Perry v. Graham,* 18 Ala. 822; *Fail v. McArthur,* 31 Ala. 26; *Johnson v. Boyles,* 26 Ala. 577; *Nelson v. Iverson,* 24 Ala. 9; *Mobile S. B. v. McDonald,* 89 Ala. 448. The court erred in refusing to admit the files and proceedings of the United States Land Office.—*Eslava v. Bolling,* 22 Ala. 721; *Stewart v. Trainor,* 49 Ala. 492; *Mobile v. Eslava,* 9 Port. 577; *Farmer v. Eslava,* 11 Ala. 1028; *Hallet v. Eslava,* 3 Stew. 123; *Innerarity v. Mims,*

1 Ala. 660; Sec. 3979, Code 1907. The court erred in not admitting the field notes.—Sec. 573, Code 1907; 3 Mayf. Dig. 118; *Bernheim v. Horton* ,103 Ala. 384; 2 Mayf. 561. The court erred in giving the affirmative charge.—*Hoffman v. White,* 90 Ala. 354; *Howard v. The State,* 108 Ala. 571.

GREGORY, L. & H. T. SMITH, for appellee. Where objections are interposed to the introduction of evidence, other objections were waived, if not stated.—*McDaniel v. The State,* 97 Ala. 14; *Whatley v. Reese,* 128 Ala. 500. If there was error in admitting the plat, it was without injury as the patent was subsequently introduced.— *Shorfer v. Southern* Ry., 121 Ala. 128; *Glover v. Gentry,* 112 Ala. 500. Where a conveyance contains a warranty of title, any title subsequently obtained by the grantee inures to the benefit of the grantee, but such a warranty is not necessary to accomplish that result.—*Carter v. Chaudron,* 21 Ala. 91; *Fairbanks v. Williams,* 7 Greenl. 97; *VanRennsalaer v. Kierney,* 11 How. 322; *Smith v. Williams,* 44 Mich. 242; *Sayre v. Sheweld L. I. & C. Co.* 106 Ala. 444. The court properly permitted the mortgages in evidence.—*Chapman v. Abrahams,* 61 Ala. 114; *Stewart v. Anderson,* 10 Ala. 504; 27 N. E. 959. It is not necessary that there be specific recitations of default in the payment of the mortgage debt.—*High v. Hoffman,* 129 Ala. 361; *Jackson v. Tribble,* 156 Ala. 489; *Naugher v. Sparks,* 110 Ala. 572; *McClure L. Co. v. Jordan,* in MSS. While the petitions for the sale may have been demurrable, yet they were not open to collateral attack.—*King v. Gilbreath,* 154 Ala. 137. The objection that the heirs were not made parties is without merit.—*Page v. Simpson,* 143 Ala. 554. Counsel discuss other assignments of error relative to evidence, but without citation of authority.

[Garrow, et al. v. Toxey.]

SAYRE, J.—This is a statutory action of ejectment brought by appellee against appellants for the recovery of a tract of land in the county of Mobile. Subject to objections which will be noticed, plaintiff showed an unbroken chain of title back to the government of the United States. A patent to one Audley Gazzam, dated March 30, 1841, constituted the first link in the chain. The effort of the defendants, defeated by rulings in the court below, was to trace their title back to the United States through a patent, dated April 8, 1848, to the heirs of one Miguel Eslava. The Eslava patent was admitted without objection. They further attempted to show a grant from the government of Spain arising out of the acts of Spanish officials during the years 1802 and 1803. Congress had dealt with Spanish claims in that territory generally and with the claims of the heirs of Miguel Eslava in particular, and both these patents were issued in pursuance of those acts of Congress. These patents, and the claims of the Eslava heirs derived from the acts of Spanish officials, raised a question of law which had elaborate consideration in the case of *Eslava v. Bolling*, 22 Ala. 721, decided by this court in 1853. In that case it appeared that conflicting patents to other lands, but raising questions identical with those here involved, had been issued under the same acts of Congress to Hunt and Gazzam and to the heirs of Eslava. Bolling held under Hunt and Gazzam. The heirs of Eslava brought ejectment. The Eslava heirs in proof of their Spanish grant offered, as we understand, the identical documents offered by the defendants in this case. And they were competent, no doubt, for that purpose in that case and in this as going a part of the way towards establishing a title under the Eslava grant and the acts of Congress. But the effect of the ruling in that case was the patent to Hunt and

Gazzam, construed in connection with the various un-
derlying acts of Congress, conveyed upon its face a
right and title superior to that evidenced by the patent
to the Eslava heirs, subject however to be defeated by
the Eslava patent upon proof in a court of justice that
Eslava was in possession of the land on and prior to
April 15, 1803, that he continued in possession for 10
years thereafter, and was on April 15, 1813, a resident
in that part of Louisiana situate east of Pearl river and
west of the Perdido, and below the thirty-first degree of
north latitude, as provided in the act of Congress of
March 2, 1829, c. 40, 4 Stat. 358. From 1803 to 1813
the sovereignty of that territory was in dispute. It was
afterwards determined by the Supreme Court of the
United States that Spanish grants during that period
were void, but by the act of Congress persons claiming
under such grants were granted patents, not because
they were entitled as of right, but because on proof of
possession, residence, etc., the government of Spain
would have granted them. Intervening rights of prior
patentees of the United States were, however, saved. It
was contended for plaintiffs in that case that the report
of the register and receiver of the Land Office to the ef-
fect that Eslava had been for 10 consecutive years in
possession before April 15, 1813, and resided at that
date within the territory ,would, with the confirmation
of that report, be sufficient evidence of those facts, and
that it was not necessary to make proof of them by wit-
nesses at the trial. The ruling was that, although the
report and confirmation would be conclusive against the
government, it was not so against Gazzam and those
claiming under him, and that other proof was necessary
to make out a case for the plaintiffs. In other words,
the ruling was that the proof was not effective to the
full extent claimed, did not go far enough, and that to

[Garrow, et al. v. Toxey.]

establish the Eslava Spanish grant it was necessary to supplement the record by proof aliunde of possession and residence prior to April 15, 1813. In the case here, duly certified copies of documents, claims, proofs, etc., made to the register of the government's land office at St. Stephens, and the finding of that official in favor of the Eslava heirs, were offered in evidence by the defendants for two purposes: (1) To prove Eslava's residence within the territory, and his possession of the land in controversy during 10 years prior to April 15, 1813, thus showing their patent to be superior to the patent under which plaintiff claimed agreeably to the act of Congress; and (2) to prove the bona fides of a possession which defendants attempted to show subsequent to the date of their patent—that is, that defendants had not held as mere intruders or trespassers, so that their mere prior possession, though not covering any continuous period of 10 years, was some evidence of title. The decision in *Eslava v. Bolling, supra,* leads to the conclusion that for the first purpose this evidence was, as between the parties, hearsay and incompetent, however ancient the record, and however well authenticated. As for the second, we see no reason to doubt that the record of the proceedings had before the Land Office were sufficient to establish a bona fide color of title, and were admissible for that purpose. But if there was error in excluding this evidence under the circumstances of the case, it was error which worked no harm to defendants for two reasons: (1) The patent under which defendants claimed, and which was admitted, evidenced the full force and effect of the proceedings had before the Land Office, to which the record, whether taken as a whole or by piecemeal, was capable of adding nothing; (2) in the absence of an impeachment of plaintiff's patent by competent evidence of those facts

by which the acts of Congress permitted it to be impeached, defendants' prior possession for a term less than 10 years, though bona fide and under color of title, was not effective to override or supersede the plaintiff's patent, so that, at last, the defendants, if properly put to proof of their title, having at hand no competent evidence of Eslava's compliance with the conditions imposed upon the patent to his heirs, their only recourse was to prove title by showing an adverse holding during some period of 10 consecutive years subsequent to the date of the patent under which the plaintiff claimed, and this the defendants attempted to show. But upon a careful reading of the evidence offered to that end we are constrained to hold that there was no evidence, covering any uninterrupted period of 10 years, which required that question to be submitted to the jury. The case, therefore, as thus far developed, depended upon the effect of the conflicting patents without more, and in this, as we have seen, the plaintiff had the advantage.

But appellants insist that the plaintiff failed in several particulars to connect himself with the Gazzam patent. Plaintiff introduced, as the next succeeding link in his chain of title, a conveyance of certain lands, including those in suit, made by Gazzam to one George Wragg, on May 19, 1838. The date of this conveyance, it will be observed, was about three years prior to the date borne by the patent to Gazzam. The bill of exceptions recites that the plaintiff offered in evidence the certified copy of a quit-claim deed from Audley H. Gazzam to George Wragg, dated May 19, 1838, and duly recorded on September 25, 1838, in the probate records of Mobile county. The deed itself is not set out. We are unable, therefore, without involving ourselves in a contradiction of the record, to consider what may have been the effect of any special covenants, which counsel in

[Garrow, et al. v. Toxey.]

their brief say the so-called quitclaim contained. We think we must take the conveyance as a mere release or quitclaim. Nor does it appear that Gazzam was in possession at the time; and defendants took these points: Where one person makes a quitclaim to another, and afterwards obtains a patent for the same lands, the title of the patent does not inure to the grantee in the quitclaim, as it would in the case of a conveyance with warranty of title.—*Tillotson v. Kennedy,* 5 Ala. 407. On the case as it is made to appear to us as of the time when the quitclaim was received in evidence, there was error in overruling the objections taken to it. The grantor by release or quitclaim is not responsible for the goodness of his title, and such a conveyance does not operate to pass or bind an interest not then in existence. The bargain between the parties proceeds upon this view, and the consideration is regulated in conformity with it.— *Van Rensselaer v. Kearney,* 11 How. 297, 322, 13 L. Ed. 703. A quitclaim does, however, convey the interest or estate of which the grantor is seised and possessed at the time. And when the defendants had put in evidence the patent to the heirs of Eslava, it appeared therein by way of recital that a certain tract of 375 acres, thereby relinquished by the government to them, and which contained the tract in suit, had been sold to Audley H. Gazzam on January 31, 1835, and a patent for the same issued to said Gazzam on March 30, 1841. On this recital, and on the authority of *Carter v. Chaudron,* 21 Ala. 72, appellee insists that the title subsequently acquired by the patent inured to the benefit of the grantee in the quitclaim. The meaning, in this connection, of *Carter v. Chaudron* may be made sufficiently clear by the following quotation: "Although the deed from Kennedy to Duval contains no covenants of warranty as to title, yet it purports to convey the whole title, and recites the

fact, that the title is, in anticipation, to be confirmed by the United States. It was so confirmed.  *  *  * As to this legal title, Joshua Kennedy is estopped by his deed from saying that it did not pass, and so, also, are his privies. It is manifest, from the deed itself, that the future confirmation was to operate an investiture of title to the purchaser. That an estoppel operates to pass the title. See 4 Kent, 98. We are, therefore, of the opinion, that the whole legal title vested in Duval upon the confirmation by the government of Kennedy's title." And in *Van Rensselaer v. Kearney, supra,* it was said that "if the deed bears on its face evidence that the grantors intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and that the bargain had proceeded upon that footing between the parties, then although it may not contain any covenants of title, in the technical sense of the term, still, the legal operation and effect of the instrument will be binding upon the grantor and those claiming under him, in respect to the estate thus described, as if a formal covenant to that effect had been inserted, at least, so far as to keep them from ever afterwards denying that he was seised of the particular estate at the time of the conveyance." But those authorities do not sustain the appellee's contention. The recitals in the patent under which the defendants claimed meant only that the government relinquished its title alike to Gazzam and to Eslava's heirs, conveying a prima facie title to Gazzam, but leaving the heirs of Eslava to disprove it in the courts of the country. The acceptance by the heirs of Eslava implied, therefore, no admission of a superior title in Gazzam. Moreover, nothing of this appeared in the previous quitclaim from Gazzam to Wragg. That conveyance was not to be extended or enlarged in effect by the subse-

quent patent to Gazzam. The error of this ruling was not cured by the introduction of the Eslava patent. And this break in the chain affected all subsequent conveyances shown by the plaintiff.

Another link in plaintiff's chain of title was shown by a mortgage from Wragg to Chandler. The property was described in the quitclaim as "commencing twenty-five chains and seventy links due east from the northwest corner of section four in township number five south, and range one west, and running thence due south," etc. In the mortgage it was described as "commencing twenty-five chains and twenty-five links due east from the southwest corner of section 4 in township 5 south, and range one west, and running thence due south," etc. It is evident that these two descriptions do not cover one and the same parcel of land.

A deed from W. W. McGuire, administrator of the estate of Jno. T. Stewart, deceased, stood in plaintiff's chain of title. It is insisted that the record of the proceedings had in the probate court for the sale of this land fails to show that the court acquired jurisdiction to order the sale. By that record it appears that McGuire received letters of administration on February 13, 1868. The petition for the sale of the land in controversy was filed February 22, 1870, and showed that "no personal property belonging to said estate ever came into his (the administrator's) possession;" that under a previous order and decree the administrator had sold certain other property; that the amount realized had proved insufficient to pay debts, and a specific balance of debts remained unpaid. April 8, 1870, was appointed for hearing the application. The record next shows that on October 17, 1871, another petition was filed for the sale of this land which recited again the sale of other land under a previous decree, and alleged that it

was "necessary to sell" the land in controversy in order to pay debts. In this last petition there is no other averment in respect to the insufficiency of personal property. In a decree, dated March 22, 1872, as the subsequent decree of confirmation shows, it is recited that, "The court having examined the proof of file and record in this estate in the matter of debts due and unpaid and also the amount of assets that have passed into the hands of the administrator, and it appearing from such examination that the cash assets were not sufficient to satisfy such debts as were presented and believed by the administrator to be valid, and that to satisfy the same it will be necessary to sell the following described property," describing the land here in suit, and a sale was ordered and subsequently confirmed. The argument against the admissibility of the deed made in pursuance of this proceeding is that, notwithstanding the allegation of the petition, there may have been ample personal property to pay debts which failed to come into the possession of the administrator by reason of some default or neglect of his, in which case no sale of the realty could have been ordered. To supplement this argument appellants contend that the decree must be referred to the petition of last date to the exclusion of that of earlier date. We do not see our way clear to an agreement. The power of the probate court to act upon the first petition, when it did act, is not excluded by the record. If either petition was insufficient to confer jurisdiction, the exercise of jurisdiction must be referred to the other, if that was sufficient, since, for aught that appears, they were both pending at the time of the decree. We think it immaterial in this case to which petition the decree of sale be referred. They were both doubtlss subject to demurrer. But the attack upon the decree is collateral, and we will not pre-

sume a devastavit. "'While the principle that the jurisdiction of courts of limited authority must be shown by the record is too deeply seated in our law for us to supply by intendment the omission of the jurisdictional facts from the record, authority, public policy, and justice alike require that, in determining whether the record does disclose the jurisdictional facts, we should construe the language of the record most favorably for the maintenance of the decree, and, where words are susceptible of two or more constructions, adopt that which will sustain the decree. We should understand the petition as it is reasonable to infer that the party who made it and the judge who acted upon it did understand it, and not as they were bound to understand it." —*King v. Kent,* 29 Ala. 542; *Wright v. Ware,* 50 Ala. 549. See *Cotton v. Holloway,* 96 Ala. 544, 12 South. 172, for an able and exhaustive discussion of the principle involved. In the recent case of *Singo v. McGhee,* 160 Ala. 245, 49 South. 290, a widow filed her petition asking that a homestead be set aside to her. The statute in such case provides that "When the property, real and personal, owned by the decedent at the time of his death, does not exceed in amount and value the exemptions allowed in favor of his widow and minor children, or either, and no administration is granted within 60 days after his death, the probate court in the county in which he resided at the time of his death, upon the application of the widow, or if there be no widow, or she does not act, upon the application of a suitable person, who shall be appointed by the judge of probate as the next friend of such minor child or children, verified by oath, and setting forth such facts, must appoint two commissioners," etc. The petition alleged that the deceased husband "owned real and personal property located in this state and county at the date of his death,

which did not exceed in amount and value the exemptions allowed the widow." Non constat, he may have owned other property. But this court held the petition sufficient, on collateral attack, to give probate court jurisdiction of the proceeding. In *King v. Gilmore,* 154 Ala. 129, 45 South. 89, there was a collateral attack upon an administrator's deed, which proceeded upon the identical ground here urged. The petition in that case averred that some years before the estate had been regularly declared insolvent. Non constat, the estate may have then been solvent. But the court held the averment that the estate had been declared insolvent a sufficient averment of the insufficiency of personal assets to pay debts. So we are of opinion that, as for the objection here in question, the record of the probate court, and the administrator's deed, were properly admitted in evidence.

Acts of ownership exercised by Geary were admissible in evidence as tending to show an interruption of the possession claimed to have been held by the defendants. But Geary did not derive his claim of title from any of the predecessors in title of the defendants, nor does the plaintiff connect himself with Julia S. Toxey to whom he conveyed. In the absence of some such showing the deed was irrelevant.

We do not perceive why the affidavit of Garrow should have been received in evidence. Its competency in respect to the claim of the defendants under the Spanish grant to Eslava has been discussed. It was likewise incompetent for any other purpose. It related to a time when the title was indisputably in the United States. Any possession held by Garrow subsequent to 1813 and prior to the patents under which the parties claimed was of no consequence as affecting that title. If possession in Garrow subsequent to the patents had

been otherwise shown, no doubt his affidavit would have been received as a contemporary declaration illustrative of the character and intent, as of the res gestae, of such possession. But no such possession was shown. The motion to strike the bill of exceptions has been decided adversely to appellee in *Lee v. Raiford, infra,* 54 South. 543. ·

We have examined the assignments of error insisted upon. For the errors pointed out, the judgment will be reversed; the cause is remanded for another trial.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and SOMERVILLE, JJ., concur.